**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **ERIC D. EDWARDS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 25-CV-275-GLJ** |
| | ) | |
| **FRANK J. BISIGNANO,** | ) | |
| **Commissioner of the Social** | ) | |
| **Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Claimant Eric D. Edwards requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED AND REMANDED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do h[er] previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in

the national economy[.]" 42 U.S.C. § 423(d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether the correct legal standards were applied. *See Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Clifton*, 79 F.3d at 1009. The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Sec'y of Health & Hum. Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Instead, the Court must review the record as a whole, and "[t]he substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Univ. Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). S*ee also Casias*, 933 F.2d at 800-01.

---

[1] Step one requires Claimant to establish that he is not engaged in substantial gainful activity. Step two requires Claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If Claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If Claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where Claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show that there is significant work in the national economy that Claimant *can* perform, given his age, education, work experience and RFC. Disability benefits are denied if Claimant can return to any of his past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

## Claimant's Background

Claimant was forty-five years old at the time of the administrative hearing. (Tr. 475, 524). He has a high school education and alleges an onset date of November 23, 2017, due to a cervical spine injury. (Tr. 698, 704). Claimant's date last insured ("DLI") was December 31, 2020.

## Procedural History

On May 24, 2020, Claimant protectively applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. (Tr. 187-93). On March 17, 2020, ALJ Christopher Hunt held an administrative hearing and determined Claimant was not disabled on May 10, 2020. (Tr. 18-62). This Court, on February 5, 2024, granted an unopposed motion to remand and reversed and remanded the case for further proceedings. (Tr. 534-36). ALJ Hunt held a second administrative hearing on August 15, 2024, and determined Claimant was not disabled on August 26, 2024. (Tr. 452-96). The Appeals Council denied Claimant's exceptions to the ALJ's decision, making the ALJ's opinion the Commissioner's final decision for purposes of this appeal. (Tr. 443-445); *See* 20 C.F.R. §§ 404.971, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. (Tr. 463). At step two he determined that Claimant, through his DLI, had the severe impairments of degenerative disc disease, status post anterior cervical discectomy and fusion with residuals, depression, and anxiety. (Tr. 455-56). He found at step three that Claimant did not meet any Listing. (Tr. 456-57). At step four he found Claimant had the residual

functional capacity ("RFC") to perform the full range of light work as defined in 20 C.F.R. §§ 404.1567(c) except Claimant is able to lift no more than twenty pounds occasionally and ten pounds frequently, can sit, stand, or walk for six hours in an eight-hour day, occasionally balance, stoop, kneel, crouch, and crawl, occasionally climb ramps or stairs but unable to climb ladders, ropes, or scaffolds, incapable of reaching or working overhead but has no limitation in reaching in all other directions, and is incapable of performing work requiring exposure to unprotected heights. (Tr. 457). Due to psychologically-based limitations, the ALJ found Claimant is able to understand, remember, and perform simple and detailed, but not complex, tasks, frequently interact with supervisors and coworkers, occasionally interact with the general public, and remain on task for two hours before needing a fifteen-minute break. (Tr. 457-58). He further found Claimant is incapable of strict production standards, such as fast-paced, integral, team assembly line work, or meat processing. (Tr. 457-58). The ALJ then concluded that although Claimant had no past relevant work, he was nevertheless not disabled because there was work he could perform in the national economy, *i.e.*, housekeeping cleaner, marker, and routing clerk. (Tr. 464).

**Review**

Claimant contends that the ALJ erred by failing to: (1) resolve a conflict between the hypothetical question he posed to the VE and his RFC, (2) resolve a conflict between the assigned job of marker and Claimant's limitation to no strict production standard work, and (3) properly analyze the medical opinions of Richard Hastings, D.O., and Brandi Shell, APRN. The Court agrees and finds merit in the first and third propositions.

The relevant medical evidence reveals Claimant suffered a work-related injury on January 13, 2015. (Tr. 811, 849, 851). In August and September 2015, in connection with a worker's compensation claim, Claimant established care with Tyler Boone, M.D., who concluded Claimant should avoid overhead activities and repetitive use of his arms above the shoulder and, if those conditions cannot be met, he is temporarily totally disabled. (Tr. 849-51). Claimant underwent an independent medical examination performed by John S. Marouk, D.O., in November 2015 which revealed a positive Spurling's test for neck pain and right shoulder pain. (Tr. 811). Dr. Marouk opined that the surgery recommended by Claimant's treating physician, an anterior cervical discectomy and fusion at C6-C7, was reasonable and necessary. (Tr. 812). Claimant underwent a C5-C6 fusion in March of 2016. (Tr. 326-48, 401, 808-09, 855). Claimant routinely followed up with Dr. Boone beginning in May 2016 through October 2016 at which point Dr. Boone opined Claimant was at maximum medical improvement but recommended Claimant avoid jobs which involve repetitive overhead activities or repetitive use of the arms away from the body above shoulder level and further found Claimant had a permanent partial impairment to the whole person. (Tr. 851-62, 873). Claimant returned to Dr. Marouk in December 2016 for an independent medical examination of his lumbar spine, and Dr. Marouk concluded no medical treatment was necessary as to Claimant's lumbar. (Tr. 813-15).

A cervical MRI was conducted in January 2017 and revealed, *inter alia*, disc degeneration at C5-C6 with right posterolateral disc osteophyte complex contributing to moderate to moderately severe "right with mild left-sided foraminal stenosis[,]" disc degeneration at C7-T1 with annual budging and posterior disc protrusion contributing to

"moderately severe right with moderate left-sided foraminal stenosis." (Tr. 806-07). Claimant followed up with Dr. Marouk on January 23, 2017, and examination revealed decreased cervical range of motion, mild weakness in tricep muscles, symmetric and brisk reflexes in the upper extremities. (Tr. 817). Dr. Marouk opined the MRI showed a syrinx and an area of myelomalacia, but there was no suggestion these injuries were work-related. He further found Claimant had achieved maximum medical improvement with regard to his cervical spine. (Tr. 817).

Richard Hastings, D.O., Ph.D., in connection with a worker's compensation claim, produced a medical opinion in November 16, 2017, in which he set forth Claimant's medical history and opined, *inter alia*, that (i) Claimant suffered a work-related injury to his cervical spine, thoracic spine, and right shoulder, resulting in discogenic structural and anatomical abnormalities at C5-C6 and C6-C7 that resulted in a necessary surgical procedure, (ii) the work-related injury was "the sole and major" cause of Claimant's need for spinal surgery, (iii) additional opinions as to causation will be needed regarding Claimant's diagnosed cervical spinal cord syrinx, (iv) Claimant sustained injuries to his spine that have been documented by treating surgeons, (v) Claimant was currently suffering from failed cervical spine surgery syndrome, (vi) further evaluation, diagnostic testing, and treatment for the work-related injuries will be necessary and the work-related injury was the sole and major cause of further evaluation, testing, and treatment, (vii) Claimant was "temporarily totally disabled" due to the work-related injury, and (viii) Claimant had previous pre-existing diagnoses of cervical spine bony osteophytosis with arthritis, uncovertebral osteoarthritis, and degenerative disc disease but the workplace injury was a

significant and identifiable aggravation of said conditions. (Tr. 326-48, 839-48). Dr. Hastings' examination of Claimant revealed a positive right shoulder impingement test, right shoulder pain both anterior and posterior with mild crepitation, weakness in abduction, flexion, and internal rotation of the right shoulder, right tricep weakness, and normal left shoulder strength and range of motion. (Tr. 346, 839).

Claimant followed up with Dr. Boone in April 2018, and Dr. Boone reiterated Claimant should continue to avoid overhead activities. (Tr. 88-82). In November 2018 Dr. Boone conclude Claimant could work but should avoid repetitive overhead activities in addition to repetitive use of the arms away from the body, and above the shoulder. (Tr. 833). Dr. Boone opined to the same limitations in December 2018, noting Claimant is at maximum medical improvement from an orthopedic standpoint. (Tr. 885).

Claimant presented for a consultative examination with Brandi Shell, APRN, on December 3, 2020. (Tr. 358-68). Examination revealed limited range of motion as to Claimant's left and right shoulders. (Tr. 364) As to Claimant's left shoulder Claimant scored 0/150 on left shoulder abduction in supination, 75/150 on forward elevation, 15/30 on abduction, 40/80 as to internal rotation, and 45/90 for external rotation. (Tr. 364). Nurse Practitioner Shell rated Claimant's right shoulder at zero across all the same categories. (Tr. 364). Following Claimant's DLI, Claimant established care with Muskogee Bone & Joint on January 9, 2023, and examination revealed a full range of motion in all four extremities. (Tr. 739). Claimant routinely followed up with his providers at Muskogee Bone & Joint for pain management services related to neck pain and cervical pain that radiated down his right arm. (Tr. 401). Claimant also routinely sought chiropractic

treatment with Jack Janway, D.C., beginning in 2019 and continuing through 2023. (Tr. 753-71). In January 2022, Dr. Janway completed a statement regarding Claimant's physical conditions in relation to an insurance disability claim, and opined Claimant is unable to return to work as "any leverage on [Claimant's] neck, upper back, or shoulders" results in pain and maintaining sitting, standing, or lying down results in pain. (Tr. 430). As to Claimant's mental impairments, the record reflects in December 2020, William Cooper Ph.D., performed a mental status examination of Claimant and opined, *inter alia*, Claimant is able to understand simple questions and follow simple questions.

State agency physicians determined initially and on reconsideration that Claimant could perform the full range of medium work. (Tr. 73-74, 94-95). State agency psychologist David Cooley, Psy.D., determined Claimant is able to perform simple and detailed tasks of one-to-four steps with routine supervision and make related judgments, can focus and maintain concentration for 2 hours, persist for an 8 hour day, interact appropriately with coworkers and supervisors but should avoid frequent public contact, adapt to a work setting and some changes in the work setting, but will be unable to maintain concentration for complex tasks and will experience some lapses on some detailed tasks that require sustained attention. (Tr. 79). On reconsideration, state agency psychologist Ryan Scott, Ph.D., found Claimant is able to understand, recall, and perform simple and detailed tasks with routine supervision and make related judgments, attend for two-hour periods with routine breaks, pace and persist for an 8-hour workday/40 hour work week, interact appropriately with coworkers, supervisors, and the public for incidental work

purposes, adapt to work setting and some changes in a work setting, and is able to avoid hazards. (Tr. 100).

At the most recent administrative hearing, Claimant testified, *inter alia*, that he is unable to get comfortable in any position, his neck pain radiates into his lower back, shoulders, and arms, and he experiences constant muscle tension in his neck and shoulders. (Tr. 482-83). He experiences pain holding his arm out in front of him and is unable to pass salt at the dinner table, engage in chores such as dishes and laundry, or get items out of cabinets. (Tr. 490-91).

The ALJ then elicited testimony from a vocational expert ("VE") to determine what jobs the claimant could perform given the RFC described above, except that claimant would be limited to "simple, *un*detailed, no complex tasks." (Tr. 494) (emphasis added). The VE testified that such a claimant could perform the jobs of housekeeping cleaner, marker, and routing clerk. (Tr. 494).

In his written opinion at step four, the ALJ summarized much of Claimant's hearing testimony and the medical evidence of record. (Tr. 458-60). He then found Claimant's statements about the intensity, persistence, and limiting effects of Claimant's symptoms were not entirely consistent with the treatment records. (Tr. 458). The ALJ found the opinion of state agency medical consultants unpersuasive as they were not supported by the evidence showing greater limitations, such as Nurse Shell's December 2020 examination of Claimant. (Tr. 460). He concluded the opinions of Dr. Boone were partially persuasive, finding that Dr. Boone's opinion that Claimant needed to avoid repetitive use of the arms away from the body not supported by Dr. Boone's 2018 examination that

showed Claimant had good range of motion as to the shoulders. Similarly, he found the opinion of Dr. Janaway unpersuasive, finding nothing in his report indicated that the limitations existed prior to Claimant's DLI, and the opinion was inconsistent with evidence. (Tr. 462). The ALJ found the opinions of the state agency psychologists partially persuasive, noting some of the findings were inconsistent with the evidence, and the opinion of Dr. Cooper unpersuasive. (Tr. 461-62). Although the ALJ discussed Claimant's December 3, 2020, consultative examination with Nurse Shell extensively, he did not state whether he found the examination persuasive or assess its supportability/consistency. Likewise, the ALJ did not evaluate, or discuss in any capacity, Dr. Hastings' November 2017 medical opinion.

## I. Medical Opinions of Nurse Shell and Dr. Hastings

Claimant first argues the ALJ erred in failing to evaluate the medical opinion of Nurse Shell and Dr. Hastings and assess the supportability and consistency factors in said evaluation. In response, the Commissioner contends that neither Nurse Shell's evaluation nor Dr. Hastings' worker's compensation medical opinion constitute medical opinions because they do not opine as to Claimant' workplace capabilities and, as such, the ALJ was not required to evaluate their persuasiveness or discuss the relevant factors.

For claims filed on or after March 27, 2017, medical opinions are evaluated pursuant to 20 C.F.R. §§ 404.1520c and 416.920c. The Social Security Administration has defined categories of evidence, including, as pertinent here, "medical opinions" and "other medical evidence." *See* 20 C.F.R. § 404.1513(a)(2), (3); 416.913(a)(2), (3). The regulations define a "medical opinion" as:

> a statement from a medical source about what an applicant can still do despite his impairment(s) and whether he has one or more impairment-related limitations involving the:
>
> (i) Ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
>
> (ii) Ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
>
> (iii) Ability to perform other demands of work, such as seeing, hearing, or using, other senses; or the
>
> (iv) Ability to adapt to environmental conditions such as temperature extremes or fumes.

20 C.F.R. § 404.1513(a)(2). Conversely, "other medical evidence" includes "judgments about the nature and severity [of a claimant's] impairments, . . . medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. § 404.1513(a)(3). Regardless of its source, the ALJ has a duty to evaluate every medical opinion in the record. *See* 20 C.F.R. § 404.1520c. However, the "ALJ is not required to articulate the persuasiveness of other medical evidence with reference to supportability and consistency." *M.H. v. Kojakazi*, 2023 WL 2401063, at *5 (D. Colo. Mar. 8, 2023).

The record reflects that the ALJ considered Nurse Shell's December 3, 2020, consultative evaluation, and the ALJ was not required to articulate whether he found her evaluation persuasive because her findings did not include specific functional limitations and was therefore not a medical opinion. Likewise, the ALJ was not required to articulate the persuasiveness of Dr. Hasting's November 2017 worker's compensation evaluation of

Claimant as it, too, did not contain functional limitations. Moreover, although Dr. Hastings opined claimant was "temporarily totally disabled" for the purposes of workers compensation, Dr. Hastings' opinion regarding Claimant's inability to work is not a medical opinion, but rather, a dispositive finding on an issue reserved to the Commissioner. Pursuant to 20 C.F.R. §§ 404.1520b(c)(3)(i), 416.920b(c)(3)(i) an ALJ is not required to consider a medical source's statements on matters that are reserved to the Commissioner, including statements that a claimant is disabled or unable to work. Such statements are "inherently neither valuable nor persuasive" and therefore, the regulations do not require the ALJ to "provide any analysis about how he considered such evidence in his determination or decision, even under [§§ 404.1520c, 416.920c]." 20 C.F.R. §§ 404.1520b(c)(3)(i), 416.920b(c)(3)(i). Thus, contrary to Claimant's assertion, the ALJ was not required to analyze Nurse Shell's or Dr. Hastings' statements in accordance with this regulation. *Tipton v. Comm'r of Soc. Sec. Admin.*, 2023 WL 2525036, at *4 (E.D. Okla. Mar. 15, 2023) (concluding the ALJ did not err by not articulating the persuasiveness of "Client Assessment Records" which did not include specific functional limitations and, as such, did not constitute medical opinions.); *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) (finding the ALJ correctly refused to consider a doctor's description of a claimant's ability to perform in the workplace as "limited" or "fair" in formulating the RFC because it failed to specify the claimant's functional limitations.); *see also, e.g.*, *Moua v. Colvin*, 541 Fed. Appx 794, 797-98 (10th Cir. 2013) ("Dr. Bhakta's treatment notes do not offer any medical opinions concerning [the claimant's] abilities or limitations. . . . Thus, there was no pertinent medical opinion for the ALJ to weigh."); 20 C.F.R. § 404.1527(a)(1)

(defining medical opinions as "judgments about the nature and severity of [a claimant's] impairment(s), including his symptoms, diagnosis and prognosis, what he can still do despite impairment(s), and his physical or mental restrictions.").

**II. Step Four**

Next, couched in a step five argument, Claimant maintains the ALJ failed to adequately consider his inability to reach in all directions. Specifically, Claimant maintains the ALJ erred in failing to discuss Dr. Hastings' November 2017 opinion or adequately consider Nurse Shell's December 2020 consultative examination. The court agrees.

"Although the ALJ need not discuss every piece of evidence, 'in addition to discussing the evidence supporting his decision, the ALJ . . . must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Galloway v. Comm'r of Soc. Sec. Admin.*, 2024 WL 1526104, at *2 (10th Cir. Apr. 9, 2024) (citing *Clifton*, 79 F.3d at 1010. "'Significantly probative evidence' includes, for example, valid results from generally accepted tests that would support a finding of disability, . . . a statement from a medical provider that relates to the severity of a claimant's impairments or their impact on her ability to function, . . . a statement from a consulting mental health professional concerning claimant's mental impairments and restrictions, . . . or an RFC assessment explaining the claimant's 'limited range of motion, inability to lift his arms above shoulder height, and pain associated with repeated movements[.]" *Id.* (internal citations omitted). "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e. g.*, laboratory findings) and nonmedical evidence (*e. g.*, daily activities,

observations)." Soc. Sec. R. 96-8p, 1996 WL 374184, at *7 (July 2, 1996). "When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination." *Jagodzinski v. Colvin*, 2013 WL 4849101, at *2 (D. Kan. Sept. 11, 2013) (citing *Brown v. Comm'r of the Soc. Sec. Admin.*, 245 F. Supp. 2d 1175, 1187 (D. Kan. Feb. 19, 2003)).

Here, although the opinion of Dr. Hastings does not contain any functional limitations, it does reveal that, seven days before Claimant's alleged onset date, Claimant suffered anterior and posterior right shoulder pain with mild crepitation, positive impingement testing, and weakness in abduction, flexion, and internal rotation. (Tr. 791-92). This is significantly probative evidence of a limitation of reaching in all directions that detracts from the ALJ's RFC, which determined Claimant only had limitations in reaching overhead during the relevant time period. Furthermore, although the ALJ acknowledges Nurse Shell's December 3, 2020, consultative examination, noting specifically that she found Claimant had limited range of motion in his bilateral shoulders, the ALJ does not account for or address the extent of Claimant's limited range of motion. Indeed, twenty-eight days before Claimant's DLI, Nurse Shell found Claimant had no range of motion in the right shoulder in supination, forward elevation, abduction, internal rotation, and external rotation. (Tr. 364). Lastly, although not noted by Claimant, the foregoing omissions as to Claimant's right shoulder impairment corroborate Dr. Boone's findings in November 2018 that Claimant needed to avoid repetitive use of his arms away from his body. The ALJ failed to credit either Dr. Hastings' or Nurse Shell's evaluations of Claimant

as consistent with Dr. Cooper's findings that Claimant needed to avoid repetitive use of his arms away from his body. Rather, the ALJ found Dr. Boone's opinion unsupported because his examination records noted he had good range of motion in his shoulders but concluded "a finding that claimant is incapable of reaching or working overhead is consistent with the December 3, 2020, examination of [Nurse] Shell . . . that showed he had limited range of motion to his bilateral shoulders." (Tr. 462). In light of Nurse Shell's evaluation indicating Claimant had limited range of motion in his right shoulder in various movements rather than only with regard to overhead movement, the Court cannot follow the logic as to why Nurse Shell's examination would support a finding that Claimant is incapable of reaching or working overhead but does not support Dr. Boone's finding that Claimant was incapable of repetitive use of his arms away from his body. It was error for the ALJ to "pick and choose" his way through the evidence in order to avoid finding Claimant disabled. *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) ("It is improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."); *see also Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001) ("Although the ALJ need not discuss all the evidence of record, he may not ignore evidence that does not support his decision, especially when that evidence is 'significantly probative.'") (internal citations omitted); *Jagodzinski*, 2013 WL 4849101, at *5 ("When the ALJ has failed to comply with Soc. Sec. R. 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination.") (citing *Brown v. Comm'r of Soc. Sec. Admin.*, 245 F. Supp. 2d 1175, 1187 (D. Kan. 2003)).

**III. Step Five**

Next, the Claimant argues the ALJ erred at step five because (i) the hypothetical question posed to the VE diverged from the RFC assessed because Claimant's RFC limited claimant to "simple and detailed, but no complex tasks" but the hypothetical question provided for "simple, undetailed, no complex tasks"; and (ii) the job of marker conflicts with Claimant's restriction to "no strict production standards".

"[T]estimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision." *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991) (quoting *Ekeland v. Bowen*, 899 F.3d 719, 724 (8th Cir. 1990)). In posing a hypothetical question to the vocational expert, the ALJ need only set forth those physical and mental impairments accepted as true by the ALJ. *Talley v. Sullivan*, 908 F.2d 585, 588 (10th Cir. 1990). Additionally, hypothetical questions need only reflect impairments and limitations borne out by the evidentiary record. *Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996). Here, it is undisputed that the ALJ's hypothetical question to the VE differs from the RFC he assessed in his decision. The Commissioner urges the Court that this difference is a result of a transcription error. However, the Court declines to accept this argument and finds that this error warrants reversal because the hypothetical question does not relate "with precision all of claimant's impairments [and] cannot constitute substantial evidence to support the Secretary's decision." *See Hargis*, 945 F.2d at 1492. Relatedly, Claimant also asserts the ALJ's hypothetical instructed that Claimant can "sit, stand, or walk six hours in an eight-hour day[,]" and that this language is imprecise, warranting reversal because it is

unclear whether Claimant is limited to six hours as to sitting, standing, or walking each, or a total of six hours combined. The Court is not convinced that such language demands reversal. However, on remand the Court encourages the ALJ to resolve this conflict.

Finally, Claimant maintains he is unable to perform the job of marker, DICOT § 209.587-034, 1991 WL 671802, because it conflicts with his limitation to no "strict production standards[.]" (Tr. 505). Such a job may conflict with Claimant's RFC. Compare *Leann M. N. Bisignano*, 2025 WL 2784870, at *5 (N.D. Okla. Sept. 30, 2025) (finding the claimant failed to identify a conflict between "the RFC determination that [the claimant] 'cannot perform work requiring specific production rate, such as assembly line work or work that requires hourly quotas[,]'" and the job of marker.) *with Spears v. Saul*, 2020 WL 9421160, at *9 (W.D. Okla. May 7, 2020) (finding "it possible that there is a conflict between" an RFC that bars production-quota work and the job of marker but not deciding the issue because any such error would be harmless), *adopted*, 2021 WL 1700360 (W.D. Okla. Apr 29, 2021); *Sandra H. v. Comm'r of Soc. Sec.*, 2019 WL 289811, at *7 (E.D. Wa. Jan 22, 2019) (noting that jobs, such as marker, that require "'attaining precise set limits, tolerances, and standards' according to the DOT description."). However, the Court need not decide here whether such a conflict exists, in light of the aforementioned errors warranting reversal that call into question the ALJ's Step four and five findings.

Nonetheless, because the ALJ failed to properly evaluate the evidence in the record, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis. On remand, the ALJ is instructed to consider *all* of the evidence in the record, both physical and mental, in assessing Claimant's RFC. If such analysis results in

any adjustment to Claimant's RFC, the ALJ should then re-determine what work, if any, Claimant can perform and ultimately whether he is disabled.

**Conclusion**

In summary, the Court finds that the correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED, and the case REMANDED for further proceedings.

**DATED** this 26th day of August, 2026.

**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**